Alisa R. Adams (California Bar # 277697)
The Dann Law Firm
26100 Towne Centre Dr
Foothill Ranch, CA 92610-3442
Telephone: (949) 200-8755
Facsimile: (866) 843-8308
notices@dannlaw.com
aadams@dannlaw.com

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| JOSHUA BISSOT,<br>        Plaintiff, | Case No. |
| | Judge |
| v. | |
| FREEDOM MORTGAGE CORPORATION,<br>        Defendant. | COMPLAINT FOR DAMAGES |
| | JURY DEMAND ENDORSED HEREON |

Plaintiff Joshua Bissot, through counsel, for his Complaint for Damages against Defendant Freedom Mortgage Corporation, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Joshua Bissot ("Bissot" or "Plaintiff") is the owner of residential real property, located at and commonly known as 66170 5th St, Desert Hot Springs, CA 92240 (the "Home").

2.    Bissot currently maintains the Home as his primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

COMPLAINT WITH JURY DEMAND - 1

3.     Defendant Freedom Mortgage Corporation ("Freedom" or "Defendant") is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 951 Yamato Rd., Ste. 175, Boca Raton, FL 33431.

4.     Freedom is the servicer of a note executed by Bissot (the "Note") and of a deed of trust on the Home that secures the Note (the "DOT") (collectively, the "Loan").

5.     Freedom has been the servicer of the Loan since December 2, 2021.

6.     Freedom services the Loan on behalf of the Government National Mortgage Association (GNMA).

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA), Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. (FDCPA), and Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. (TILA).

8.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## **SUMMARY OF CLAIMS**

10.     This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13.     Bissot asserts claims for relief against Freedom for violations of the specific rules under RESPA and Regulation X, as set forth, infra.

14.     Freedom is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

15.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

16.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

17.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

18.     Bissot has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

19.     Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).

COMPLAINT WITH JURY DEMAND - 3

## FACTUAL BACKGROUND

### (Issues With Freedom's Servicing of the Loan)

27.    On or about March 30, 2018, Bissot obtained the Loan from non-party Home Point Financial Corporation ("Home Point").

28.    Bissot fell behind on his obligations on the Loan due to the Presidentially-Declared COVID-19 National Emergency and sought reinstatement funds from the California Housing Finance Agency (the "Agency") wherein they paid his past due monthly mortgage payments.

29.    When Freedom began servicing the Loan effective December 2, 2021, the Loan was considered delinquent and due and owing for the September 2021 payment.

30.    On or about December 1, 2022, Freedom received funds in the amount of $14,893.11 from the Agency which Freedom applied to the Loan.

31.    These funds were intended to reinstate the Loan and were sufficient to cover all payments due and owing through the December 1, 2022 payment.

32.    After application of these funds, Bissot should have been due and owing for the January 1, 2023 payment, which is confirmed by Bissot's mortgage statement dated December 1, 2022. A copy of the mortgage statement is attached as **Exhibit 1**.

33.    Around this time, Bissot began working with a loan officer for Freedom to obtain a cash out refinance loan.

34.    Inexplicably, Freedom thereafter reversed $835.51 in funds from the Agency—the amount sufficient to cover the December 1, 2023 payment—and then retroactively placed the Loan into a default status due and owing for the December 1, 2023 payment.

35.    Bissot attempted to resolve this matter with Freedom, with Freedom claiming that the Agency requested the $835.51 in funds be returned.

COMPLAINT WITH JURY DEMAND - 5

36.    Freedom has not provided any evidence of such a request from the Agency.

37.    In Bissot's communications with the Agency, the Agency has indicated that no such request was issued to Freedom.

38.    As a result of Freedom's actions, Freedom has unnecessarily placed the Loan into a delinquent status and has attempted to collect funds for the December 1, 2022 payment from Bissot which should have been and was paid through the Agency funds.

39.    On or about January 3, 2023, Freedom sent Bissot a notice claiming that the Loan was two payments overdue (the "Delinquency Notice"). A copy of the Delinquency Notice is attached as **Exhibit 2**.

40.    On or about January 14, 2023, Freedom reported the Loan as "Late 30 Days" to credit reporting agencies.

41.    On or about January 18, 2023, Freedom sent Bissot a mortgage statement that claimed that the Loan was past due in the amount of $1,671.02. A copy of the mortgage statement is attached as **Exhibit 3**.

42.    Pursuant to Bissot's Escrow Account disclosure statement dated February 16, 2023, he inexplicably had a monthly escrow payment of $0.00 for the preceding year despite the Loan being escrowed and having a negative beginning balance of -$4,184.80 at the beginning of the escrow calculation period.

43.    On information and belief, had Freedom properly calculated the monthly escrow payment due and owing for the year beginning April 2022, the escrow account would have been fully funded through the payment of the Agency funds and Bissot would not have a current escrow shortage.

44.    In essence, it is believed that due to Freedom's errors, Bissot has lost the opportunity of receiving up to $1,788.69 in funding through the Agency due to Freedom's escrow miscalculations for the escrow period beginning April 2022.

45.    Further, Bissot is unnecessarily being charged up to $149.05 each month from April 2023 onward which should have and would have not been required but for Freedom's actions.

**(Bissot's Attempts to Have Freedom Correct its Errors)**

46.    In February 2023, Bissot engaged counsel for representation to request information relating to the Loan and to investigate Freedom's servicing of the Loan.

47.    On or about February 22, 2023, Bissot, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to Freedom at the address designated by Freedom for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

     a.    Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

     b.    Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a full transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

COMPLAINT WITH JURY DEMAND - 7

Copies of RFI #1 and RFI #2 (collectively, the "RFIs") and tracking information evidencing delivery of RFI #1 and RFI #2 are attached as **Exhibit 4** and **Exhibit 5**, respectively.

48.     With the RFIs, Bissot enclosed a "Written Consent/Authorization for Requests for Information & Notices of Error" that updated his designated notice address under the Section 15 of the DOT, and instructed Freedom to send all responses to any requests for information and notices of error to Dann Law. *See* Exhibit 5 and Exhibit 6.

49.     Freedom received the RFIs at the Designated Address on February 28, 2023. *See* Exhibit 5 and Exhibit 6.

50.     Freedom failed to send any timely notice acknowledging receipt of the RFIs.

51.     Freedom failed to send any timely substantive response to the RFIs.

52.     On or about April 3, 2023, Bissot, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to Freedom at the Designated Address. A copy of NOE #1 and tracking information evidencing delivery of NOE #1 is attached as **Exhibit 7**.

53.     Through NOE #1, Bissot asserted that:

a.     Freedom failed to timely and properly respond to RFI #1; and

b.     Freedom failed to provide Bissot with an accurate payment statement.

*See* Exhibit 7.

54.     Freedom received NOE #1 at the Designated Address on April 13, 2023. *See* Exhibit 7.

55.     Freedom failed to send any timely notice acknowledging receipt of NOE #1.

56.     On or about March 30, 2023, Freedom sent Bissot, to the Home, an untimely response to RFI #1's request for an accurate payoff statement ("Payoff #1"). A copy of Payoff #1 is attached as **Exhibit 8**.

COMPLAINT WITH JURY DEMAND - 8

57.   On or about April 27, 2023, Freedom sent Bissot, to the Home, an untimely response to RFI #1's request for the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan (the "April 2023 Response"). A copy of the April 2023 Response is attached as **Exhibit 9**.

58.   The April 2023 Response states that "[o]ur records confirm the owner/trustee of your loan is ." and "[p]lease see the owner/trustee contact information below." *See* Exhibit 9.

59.   Put in other words, the April 2023 Response failed to identify the owner/trustee of the Loan and failed to provide address and contact information for the owner/trustee. *See* Exhibit 9.

60.   On or about April 28, 2023, Freedom sent Bissot an untimely response to RFI #1/NOE #1's request for an accurate payoff statement ("Payoff #2"). A copy of Payoff #2 is attached as **Exhibit 10**.

61.   On or about May 2, 2023, Freedom sent Bissot an untimely response to RFI #1/NOE #1's request for an accurate payoff statement ("Payoff #3"). A copy of Payoff #3 is attached as **Exhibit 11**.

62.   On or about May 17, 2023, Freedom sent Bissot a response to NOE #1 and RFI #2 (the "May 2023 Response"). A copy of the May 2023 Response is attached as **Exhibit 12**.

63.   Through the May 2023 Response, Freedom notes that it received NOE #1 but failed to address the errors asserted by NOE #1 and instead provided some of the information requested by RFI #2. *See* Exhibit 12.

64.   Through the May 2023 Response, Freedom improperly refused to provide information relating to the Loan that he is entitled to receive, specifically, copies of servicing

notes, copies of broker's price opinions, copies of written correspondence related to loss mitigation, and dates Freedom received loss mitigation applications, agreements, and appeals.

65.     Despite Bissot requesting a full mortgage transaction history through RFI #2, the May 2023 Response enclosed a list of transactions from December 7, 2021 to the date of the response and failed to provide a list of transactions for the time when Home Point serviced the Loan, despite providing the closing disclosure from March 29, 2018.

66.     On or about May 31, 2023, Bissot, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 with a request for information pursuant to 12 C.F.R. § 1024.36 ("NOE #2/RFI #3") to Freedom at the Designated Address. A copy of NOE #2/RFI #3 and tracking information evidencing delivery of NOE #2/RFI #3 is attached as **Exhibit 13**.

67.     Through NOE #2, Bissot asserted that:

a.     Freedom failed to timely and properly respond to RFI #1 and NOE #1;

b.     Freedom failed to timely and properly respond to RFI #2;

c.     Freedom assessed improper fees and charges to the Loan relating to Bissot's escrow account, as discussed, *supra*; and,

d.     Freedom failed to properly apply the accepted reinstatement funds to the Loan, as discussed, *supra*.

*See* Exhibit 13.

68.     Freedom received NOE #2/RFI #3 at the Designated Address on June 2, 2023. *See* Exhibit 13.

69.     Freedom failed to send any timely notice acknowledging receipt of NOE #2/RFI #3.

COMPLAINT WITH JURY DEMAND - 10

70.    On or about June 27, 2023, Freedom sent Bissot a response to NOE #2/RFI #3 (the "June 2023 Response"). A copy of the June 2023 Response is attached as **Exhibit 14**.

71.    In the June 2023 Response, Freedom responded to RFI #1/NOE #1's request for the name, address, and contact information for the current owner or assignee of the Loan and wholly ignored the additional errors asserted in NOE #2. *See* Exhibit 14.

## IMPACT AND DAMAGES

72.    Freedom's improper actions caused Bissot to suffer from actual and proximate damages including, but not limited to:

a.    Losing out on approximately $2,624.30 in funds from the Agency;

b.    Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Bissot was personally obligated or which otherwise negatively impacted any equity in the Home to which he was entitled;

c.    Legal fees, costs, and expenses to submit requests for information and notices of error to Freedom in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to have Freedom mitigate the harm caused to Bissot to which he did not receive proper or adequate responses;

d.    Significant delay in Bissot's efforts to obtain a cash out refinance loan;

e.    Unwarranted and significant harm to Bissot's credit rating and a significant delay in the rehabilitation of his credit due to the unnecessarily continued delinquency on the Loan for which he has not received proper redress from Freedom; and,

COMPLAINT WITH JURY DEMAND - 11

f.     Severe emotional distress driven by Freedom's failure to properly handle the servicing of the Loan and by the justified fear that such blatant indifference would result in the filing of a foreclosure action, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF FREEDOM'S
## VIOLATIONS OF RESPA AND REGULATION X

73.     Freedom's actions are part of a pattern and practice of behavior in violation of Bissot's rights and in abdication and contravention of Freedom's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

74.     Freedom has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

75.     Bissot has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Freedom engaged in similar conduct against other borrowers. In particular, Bissot has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 15**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Freedom has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE
## VIOLATIONS OF THE FDCPA
## 15 U.S.C. §§ 1692, ET SEQ.

76.    Bissot restates and incorporates all of the allegations contained in paragraphs 1 through 75 in their entirety, as if fully rewritten herein.

77.    Bissot is a "consumer" as he is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

78.    The Loan is a "debt" as it is an obligation or alleged obligation of Bissot to pay money arising out of a transaction primarily for personal, family, or household purposes - the purchase of the Home. 15 U.S.C. § 1692a(5).

79.    Freedom is a "debt collector" because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as GNMA. 15 U.S.C. § 1692a(6).

80.    When Freedom acquired the servicing rights to the Loan, Bissot was in default of his obligations thereunder, as he was contractually in default. *See*, 15 U.S.C. § 1692a(6)(F)(iii).

81.    The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate this provision, such as prohibiting the use of:

    a.    False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A));

    b.    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed (15 U.S.C. § 1692e(8)); and,

    c.    False representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

82.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The FDCPA provides examples of conduct that

COMPLAINT WITH JURY DEMAND - 13

violate this provision, such as prohibiting the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

83. Freedom violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f, and 1692f(1) by making false representations in the Delinquency Notice that the Loan was past due for two monthly payments, wrongfully communicating false credit information, falsely representing that Bissot owed improper late charges and other fees and/or expenses, and collecting amounts that Bissot did not owe. *See e.g.* Exhibit 2 and Exhibit 3.

84. Freedom's actions have caused Bissot to suffer actual damages, as outlined, *supra*.

85. As a result of Freedom's actions, Freedom is liable to Bissot for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

86. Additionally, Bissot requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## COUNT TWO
## VIOLATIONS OF RESPA
## 12 C.F.R. § 1024.36 AND 12 U.S.C. § 2605(k)

87. Bissot restates and incorporates all of the allegations contained in paragraphs 1 through 75 in their entirety, as if fully rewritten herein.

88. RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

89. "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that

COMPLAINT WITH JURY DEMAND - 14

enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

90.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

91.    "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the request for information." 12 C.F.R. § 1024.36(c).

92.    A servicer must respond to a request for information by:

    (i)    Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

    (ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

93.    Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

    (A)    Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

COMPLAINT WITH JURY DEMAND - 15

(B)    For all other requests for information, not later than 30 days (excluding legal
public holidays, Saturdays, and Sundays) after the servicer receives the
information request.

12 C.F.R. § 1024.36(d)(2)(i).

94.    RFI #1, RFI #2, and RFI #3 (collectively, the "RFIs") constitute requests for
information as defined by 12 C.F.R. § 1024.36(a) as each is a written request from Bissot that
includes his name, mortgage loan account number, and property address and requests information
related to the Loan. *See* Exhibit 4, Exhibit 5, and Exhibit 13.

95.    On or about February 22, 2023, Bissot, through counsel, sent RFI #1 to Freedom
at the Designated Address. *See* Exhibit 4.

96.    Through RFI #1, Bissot requested information concerning the Loan, specifically
the name, address, and contact information for the current owner or assignee, master servicer, and
current servicer of the Loan. *See* Exhibit 4.

97.    Freedom received RFI #1 at the Designated Address on February 28, 2023. *See*
Exhibit 4.

98.    Freedom was required to provide written acknowledgment of its receipt of RFI #1
by March 7, 2023, or within five (5) business days of receiving RFI #1. See 12 C.F.R. § 1024.36(c).

99.    Freedom failed to send a timely and proper notice acknowledging receipt of RFI
#1 to Bissot's designated notice address pursuant to Section 15 of the DOT.

100.    Although Bissot has not suffered actual monetary damages as a result of
Freedom's failure to timely and properly acknowledge receipt of RFI #1, Freedom's conduct
demonstrates a pattern or practice of noncompliance with its RESPA obligations.

101.    Freedom was required to provide a written response to RFI #1 by March 14, 2023,
or within ten (10) business days of receiving RFI #1. See 12 C.F.R. § 1024.36(d)(2)(i)(A).

102.  A servicer may not extend the time period for requests for information governed by 12 C.F.R. § 1024.36(d)(2)(i)(A). 12 C.F.R. § 1024.36(d)(2)(ii).

103.  Freedom failed to send a timely and proper substantive response to RFI #1.

104.  As a result of this failure, on or about April 3, 2023, Bissot sent NOE #1 to Freedom wherein Bissot made the information requests contained in RFI #1 anew. *See* Exhibit 7.

105.  Freedom received NOE #1 at the Designated Address on April 13, 2023. *See* Exhibit 7.

106.  Freedom was required to provide a written response to the renewed request of NOE #1 by April 27, 2023, or within ten (10) business days of receiving the renewed request of NOE #1. See 12 C.F.R. § 1024.36(d)(2)(i)(A).

107.  Freedom failed to send a timely and proper substantive response to the renewed request of NOE #1.

108.  On or about April 27, 2023, Freedom sent Bissot the April 2023 Response which attempted, but failed, to respond to RFI #1 and the renewed request of NOE #1. *See* Exhibit 9.

109.  As a result of Freedom's failure to properly respond to RFI #1 and NOE #1, on or about May 31, 2023, Bissot sent NOE #2 to Freedom wherein Bissot made the information requests contained in RFI #1 and NOE #1 anew. *See* Exhibit 13.

110.  Freedom received NOE #2 at the Designated Address on June 2, 2023. *See* Exhibit 13.

111.  Freedom failed to send a timely substantive response to the renewed request of NOE #2.

COMPLAINT WITH JURY DEMAND - 17

112. Freedom did not provide the information requested through RFI #1 and the renewed requests until approximately June 27, 2023 through the June 2023 Response, and after Bissot incurred attorneys' fees and costs for NOE #1 and NOE #2. *See* <u>Exhibit 14</u>.

113. Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(i) as Freedom did not timely provide the information requested through RFI #1 and the renewed requests.

114. Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(ii), as Freedom's failure to timely and properly provide Bissot with the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan indicates that it failed to perform a reasonable search for the information requested through RFI #1 and the renewed requests.

115. On or about February 22, 2023, Bissot, through counsel, sent RFI #2 to Freedom at the Designated Address. *See* <u>Exhibit 5.</u>

116. Through RFI #2, Bissot requested information concerning the Loan, including a full transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items. *See* <u>Exhibit 5</u>.

117. Freedom received RFI #2 at the Designated Address on February 28, 2023. *See* <u>Exhibit 5</u>.

118. Freedom was required to provide written acknowledgment of its receipt of RFI #2 by March 7, 2023, or within five (5) business days of receiving RFI #2. See 12 C.F.R. § 1024.36(c).

119. Freedom failed to send a timely and proper notice acknowledging receipt of RFI #2 to Bissot's designated notice address pursuant to Section 15 of the DOT.

COMPLAINT WITH JURY DEMAND - 18

120.  Although Bissot has not suffered actual monetary damages as a result of Freedom's failure to timely and properly acknowledge receipt of RFI #2, Freedom's conduct demonstrates a pattern or practice of noncompliance with its RESPA obligations.

121.  Freedom was required to provide a written response to RFI #2 by April 11, 2023, or within thirty (30) business days of receiving RFI #2. See 12 C.F.R. § 1024.36(d)(2)(i)(B).

122.  Freedom failed to send a timely and proper substantive response to RFI #2.

123.  On or about May 17, 2023, Freedom provide some of the information requested through RFI #2 through the May 2023 Response. *See* Exhibit 12.

124.  As a result of Freedom's failure to timely and properly respond to RFI #2, on or about May 31, 2023, Bissot sent NOE #2 to Freedom wherein Bissot made the information requests contained in RFI #2 anew. *See* Exhibit 13.

125.  In the June 2023 Response, Freedom refused to provide the information requested through RFI #2 and the renewed request as contained in NOE #2. *See* Exhibit 14.

126.  Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(i) as Freedom did not timely provide the information requested through RFI #2 and the renewed request of NOE #2.

127.  Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(ii), as Freedom's failure to timely and properly provide Bissot with all of the information requested through RFI #2 indicates that it failed to perform a reasonable search for the information requested through RFI #2 and the renewed request of NOE #2.

128.  On or about May 31, 2023, Bissot, through counsel, sent RFI #3 to Freedom at the Designated Address. *See* Exhibit 13.

COMPLAINT WITH JURY DEMAND - 19

129.  Through RFI #3, Bissot requested information concerning the Loan, including a detailed breakdown of any fees since December 1, 2022 and copies of servicing notes, communications, recordings, and communication logs relating to any communications between the Agency and Freedom and Bissot's attempts to remit payments or disputes regarding the same since October 1, 2022. *See* Exhibit 13.

130.  Freedom received RFI #3 at the Designated Address on June 2, 2023. *See* Exhibit 13.

131.  Freedom was required to provide written acknowledgment of its receipt of RFI #3 by June 9, 2023, or within five (5) business days of receiving RFI #3. *See* 12 C.F.R. § 1024.36(c).

132.  Freedom failed to send a timely and proper notice acknowledging receipt of RFI #3 to Bissot's designated notice address pursuant to Section 15 of the DOT.

133.  Although Bissot has not suffered actual monetary damages as a result of Freedom's failure to timely and properly acknowledge receipt of RFI #3, Freedom's conduct demonstrates a pattern or practice of noncompliance with its RESPA obligations.

134.  In the June 2023 Response, Freedom refused to provide the information requested through RFI #3. *See* Exhibit 14.

135.  Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(i) as Freedom did not timely provide the information requested through RFI #3.

136.  Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1)(ii), as Freedom's failure to timely and properly provide Bissot with all of the information requested through RFI #3 indicates that it failed to perform a reasonable search for the information requested through RFI #3.

137.  Freedom's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k) and has caused Bissot to suffer actual damages as detailed, *supra*, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #1 and NOE #2.

138.  Further, Freedom's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k) caused Bissot's attorneys' fees and costs associated with the preparation of the RFIs to metamorphose into damages. Marais v. Chase Home Fin., LLC (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); see Marais v. Chase Home Fin. LLC (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); Pope v. Carrington Mortg. Servs., LLC, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

139.  Freedom's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Bissot's rights and in abdication of Freedom's obligations under RESPA and Regulation X.

140.  As a result of Freedom's actions, Freedom is liable to Bissot for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

141.  Additionally, Bissot requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE**
**VIOLATIONS OF RESPA**
**12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605(k)**

142.  Bissot restates and incorporates all of the allegations contained in paragraphs 1 through 75 in their entirety, as if fully rewritten herein.

143.  "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

144.  Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

145.  A servicer must respond to a notice of error by either:

   (A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

   (B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

146.  A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

   (A)   Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

COMPLAINT WITH JURY DEMAND - 22

(B)     Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)     For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

147. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

148. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

149. NOE #1 and NOE #2 (collectively, the "NOEs") constitute notices of error as defined by 12 C.F.R. § 1024.35(a) as each is a written notice from Bissot that includes his name, mortgage loan account number, and property address and asserts errors that he believed to have occurred. *See* Exhibit 7 and Exhibit 13.

150. On or about April 3, 2023, Bissot, through counsel, sent NOE #1 to Freedom at the Designated Address. *See* Exhibit 7.

151. Through NOE #1, Bissot asserted that:

a.      Freedom failed to timely and properly respond to RFI #1; and

b.      Freedom failed to provide Bissot with an accurate payment statement.

*See* Exhibit 7.

COMPLAINT WITH JURY DEMAND - 23

152. Freedom received NOE #1 at the Designated Address on April 13, 2023. *See* Exhibit 7.

153. Freedom was required to provide written acknowledgment of its receipt of NOE #1 by April 20, 2023, or within five (5) business days of receiving NOE #1. See 12 C.F.R. § 1024.35(d).

154. Freedom failed to send any timely notice acknowledging receipt of NOE #1 to Bissot's designated notice address pursuant to Section 15 of the DOT.

155. Although Bissot has not suffered actual monetary damages as a result of Freedom's failure to timely and properly acknowledge receipt of NOE #1, Freedom's conduct demonstrates a pattern or practice of noncompliance with its RESPA obligations.

156. On or about May 17, 2023, Freedom sent Bissot the May 2023 Response in response to NOE #1. *See* Exhibit 12.

157. The May 2023 Response failed to address the errors asserted by NOE #1, instead, Freedom mere states:

> The remaining requests and/or allegations contained in your correspondence do not require a substantive response under 12 C.F.R. §§1024.35-1024.36 (and/or exceptions articulated therein) or do not otherwise require a response under state or federal law.

*See* Exhibit 12.

158. Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Freedom did not correct any errors as identified in NOE #1.

159. Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Freedom's failure to address the errors asserted in NOE #1 indicates that it failed to perform a reasonable investigation into the errors alleged through NOE #1.

COMPLAINT WITH JURY DEMAND - 24

160.  On or about May 31, 2023, Bissot, through counsel, sent NOE #2 to Freedom at the Designated Address. *See* Exhibit 13.

161.  Through NOE #2, Bissot asserted that:

a.   Freedom failed to timely and properly respond to RFI #1 and NOE #1;

b.   Freedom failed to timely and properly respond to RFI #2;

c.   Freedom assessed improper fees and charges to the Loan relating to Bissot's escrow account, as discussed, *supra*; and,

d.   Freedom failed to properly apply the accepted reinstatement funds to the Loan, as discussed, *supra*. *See* Exhibit 13.

162.  Freedom received NOE #2 at the Designated Address on June 2, 2023. *See* Exhibit 13.

163.  Freedom was required to provide written acknowledgment of its receipt of NOE #2 by June 9, 2023, or within five (5) business days of receiving NOE #2. See 12 C.F.R. § 1024.35(d).

164.  Freedom failed to send any timely notice acknowledging receipt of NOE #2 to Bissot's designated notice address pursuant to Section 15 of the DOT.

165.  Although Bissot has not suffered actual monetary damages as a result of Freedom's failure to timely and properly acknowledge receipt of NOE #2, Freedom's conduct demonstrates a pattern or practice of noncompliance with its RESPA obligations.

166.  On or about June 27, 2023, Freedom sent Bissot the June 2023 Response in response to NOE #2. *See* Exhibit 14.

167.  The June 2023 Response wholly fails to address the errors asserted by NOE #2. *See* Exhibit 14.

COMPLAINT WITH JURY DEMAND - 25

168.  Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Freedom did not correct any errors as identified in NOE #2.

169.  Freedom did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Freedom's failure to address the errors asserted in NOE #2 indicates that it failed to perform a reasonable investigation into the errors alleged through NOE #2.

170.  Freedom's failure to properly respond to the NOEs by failing to correct its errors or to otherwise perform reasonable investigations into and otherwise properly respond to the errors alleged through the NOEs constitutes violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and has caused Bissot to suffer actual damages as detailed, *supra*. See Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

171.  Further, Freedom's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Bissot's attorneys' fees and costs associated with the preparation of the NOEs to metamorphose into damages. See Marais I, 736 F.3d at 721; Marais II, 24 F. Supp. 3d at 726-728; Pope, 2018 U.S. Dist. LEXIS 98413, at *11.

172.  Freedom's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Bissot's rights and in abdication of Freedom's obligations under RESPA and Regulation X.

173.  As a result of Freedom's actions, Freedom is liable to Bissot for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

174.  Additionally, Bissot requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT FOUR**
**VIOLATIONS OF THE TILA**
**15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3), ET SEQ.**

175.  Bissot restates and incorporates all of the allegations contained in paragraphs 1 through 75 in their entirety, as if fully rewritten herein.

176.  TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3).

177.  Bissot, through counsel, submitted RFI #1 seeking an accurate payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) and Freedom received RFI #1 on February 28, 2023. *See* Exhibit 5.

178.  Freedom was required to send an accurate payoff statement within seven (7) business days from February 28, 2023, or on or before March 9, 2023. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3).

179.  In response to Bissot's request for an accurate payoff statement, Freedom failed to timely provide him with an accurate payoff statement as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), as Freedom provided the untimely and/or inaccurate Payoff #1, Payoff #2, and Payoff #3.

180.  Bissot was harmed as a result of Freedom's actions, including, but not limited to, legal fees and costs incurred with sending NOE #1, which would not have been necessary but for Freedom's failure to timely provide an accurate payoff statement. *See* Exhibit 9.

181. As a result of its actions, Freedom is liable to Plaintiffs for actual damages, statutory damages, and attorneys' fees and costs. 15 U.S.C. § 1640(a)(1)-(3).

**COUNT FIVE**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**

182.  Bissot restates and incorporates all of the allegations contained in paragraphs 1 through 75 in their entirety, as if fully rewritten herein.

183.  The UCL defines unfair competition to include any "unfair, unlawful, or fraudulent business practice and unfair, deceptive, untrue, or misleading advertising and any act prohibited by Chapter 1 of Part 3 of Division 7 of [California's] Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

184.  Freedom violated the UCL by engaging in unlawful and unfair business acts and practices.

185.  Freedom is considered a "person" as defined by the statute. Cal. Bus. & Prof. Code § 17201.

186.  Pursuant to the statute, Bissot has suffered injury-in-fact and has lost money because of the unfair competition set forth herein, as discussed, *supra*.

187.  **Unlawful Prong**. A business act or practice is unlawful pursuant to the UCL if it violates any other law or regulation.

188.  As discussed, *supra*, Freedom's conduct violates RESPA and Regulation X.

189.  **Unfairness Prong**. A business act or practice is unfair pursuant to the UCL if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

190.  Freedom's unfair acts and practices include failing to properly account for consumers' payments, demanding and collecting amounts not due, failing to properly calculate consumers' escrow obligations, and failing to properly investigate consumers' complaints.

191. Freedom's conduct caused Bissot to suffer frustration, anxiety, emotional distress, and financial hardship, as discussed, *supra*.

192. Freedom's business practices are unfair because they offend public policy; they are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious. The injuries caused by this conduct and the harm to consumers outweigh the possible utility from these aforementioned practices.

193. There is no benefit to consumers or competition by allowing Freedom to mishandle Bissot's and other consumers' payments, demand and collect amounts not due, fail to properly calculate consumers' escrow obligations, and refuse to properly investigate and correct errors brought to Freedom's attention.

194. The gravity of the harm suffered by Bissot resulting from Freedom's conduct alleged herein outweighs any legitimate justification, motive, or reason for Freedom's conduct.

195. Accordingly, Freedom's actions are immoral, unethical, and unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Bissot.

196. As a result of Freedom's unlawful and unfair practices, Bissot, as appropriate on behalf of the general public, seeks all allowable damages under the UCL.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Joshua Bissot respectfully requests that this Court enter an Order granting Judgment against Defendant Freedom Mortgage Corporation as follows:

A. Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Five;

COMPLAINT WITH JURY DEMAND - 29

B.     Statutory damages of One Thousand Dollars ($1,000.00) for the violations of the FDCPA contained in Count One;

C.     Statutory damages of Two Thousand Dollars ($2,000.00) for each violation of RESPA contained in Counts Two and Three;

D.     Statutory damages of Four Thousand Dollars ($4,000.00) for the violations of the TILA contained in Count Four;

E.     Costs and reasonable attorneys' fees as to Counts One through Five; and,

F.     Such other relief which this Court may deem appropriate.

*/s/  Alisa R. Adams*
Alisa R. Adams (California Bar # 277697)
DannLaw
26100 Towne Centre Dr
Foothill Ranch, CA 92610-3442
Telephone: (949) 200-8755
Facsimile: (866) 843-8308
aadams@dannlaw.com

Marc E. Dann (Ohio Bar No. 0039425)*
Daniel M. Solar (Ohio Bar No. 085632)*
*(pro hac vice anticipated)
Dann Law
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff*

COMPLAINT WITH JURY DEMAND - 30

## **JURY DEMAND**

Plaintiff Joshua Bissot hereby respectfully demands a trial by jury on all such claims that may be so tried.


/s/   *Alisa R. Adams*
Alisa R. Adams

*Counsel for Plaintiff*

COMPLAINT WITH JURY DEMAND - 31